Fred Newburg and Flossie Newburg v. Commissioner.
Newburg v. Commissioner
Docket No. 4720-62.
United States Tax Court
T.C. Memo 1965-46; 1965 Tax Ct. Memo LEXIS 284; 24 T.C.M. (CCH) 248; March 4, 1965
Henry Cohen, for the petitioners. Daniel Lee Stewart, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency of $1,144.72 in petitioners' income tax for 1957. The only issue is whether the petitioner, Fred Newburg, held certain property for more than six months, so that his profit on the sale of the property is taxable as long-term capital gain under section 1231 of the Internal Revenue Code of 1954. Findings of Fact The stipulated facts are hereby found. The petitioners are residents of San Francisco, California who *285 filed their joint Federal income tax return for the year 1957 with the district director of internal revenue, San Francisco, California. Fred Newburg will be hereinafter referred to as the petitioner. The petitioner was engaged in the business of auctioneering, liquidating businesses, and appraising businesses during the year 1957. In 1956, Lawrence Warehouse Company, San Francisco, California, the owner and operator of a cold storage warehouse, Stockton Cold Storage Warehouse, Stockton, California, commenced negotiations for its sale. On or about August 20, 1956, petitioner and Lawrence Warehouse Company executed "a memorandum of agreement of sale" by Lawrence Warehouse Company to the petitioner of the real property and all warehouse equipment located thereon, under which the petitioner was to pay $100,000 for the property, $10,000 to be paid on the execution of the agreement, and the balance on or before November 30, 1956. This agreement, inter alia, provided: It is understood that said property is presently being operated as a public utility warehouse. This sale is expressly made subject to the issuance by the California Public Utilities Commission of any such permit as may *286 be legally required to authorize you to sell or transfer such property or to abandon your public utility operation and withdraw therefrom. It is agreed that I [petitioner] have the option to determine at any time up to September 15th as to whether the Commission shall be requested to issue a permit to sell or to abandon. It is further agreed that if I do not give you [Lawrence Warehouse Company] notice in writing on or before September 15th that I wish to have the property sold with utility operation continued, you shall thereafter apply to the Commission for any necessary authority to abandon and withdraw the public utility operation or to sell it without continuance of the public utility status, and, if I notify you, you will apply for authority to sell the property with the public utility status to continue. * * * On the same date a separate "supplemental memorandum" agreement was executed by the same parties to be considered as part of the agreement of sale. In it was the provision that if petitioner was to "sell or otherwise dispose of all or part, whether in one or more transactions, of said property" petitioner was to pay Lawrence Warehouse Company one half of the proceeds *287 of the sale in excess of $100,000. The petitioner was represented by a lawyer and was aware that the Stockton Cold Storage Warehouse was a public utilities warehouse at the time he executed the August 20, 1956, memorandum agreement of sale. The petitioner paid Lawrence Warehouse Company $10,000 on August 20, 1956 and $90,000 on or about November 29, 1956. The petitioner's attorneys, at the latter time, requested Lawrence Warehouse Company to take immediate steps to successfully prosecute an appropriate application with the Public Utilities Commission for the transfer of the Stockton Cold Storage Warehouse property. On or about January 31, 1957, Lawrence Warehouse Company and petitioner executed an agreement, which provided that Lawrence Warehouse Company, the owner of the Stockton Cold Storage Warehouse property, agreed to sell the property to the petitioner for $200,000, $100,000 of which was to be paid on the date of transfer of title and possession by Lawrence Warehouse Company to petitioner. This agreement between petitioner and Lawrence Warehouse Company further provided that Lawrence Warehouse Company would cause title and possession of the properties to be transferred *288 to petitioner within a reasonable time following the effective date of a decision of the California Public Utilities Commission approving the transfers; that the transfers of title and possession and the rights and obligations of the parties under the agreement were subject to the prior approval or consent of the Public Utilities Commission of the State of California; and that in the event of an adverse decision by the Commission, the agreement should become void and all rights and obligations cease. On or about January 31, 1957, petitioner and Lawrence Warehouse Company also executed an agreement that the puchase price for the Stockton Cold Storage Warehouse property should be $100,000, instead of $200,000, and that Lawrence Warehouse Company should receive one half of the proceeds over $100,000 which petitioner would receive on the sale of the warehouse to Union Ice & Storage Company. On February 12, 1957, due to the fact that Lawrence Warehouse Company had not been able to give the petitioners possession of the Stockton Cold Storage Warehouse because of their delay in obtaining permission from the Public Utilities Commission of the State of California Lawrence Warehouse Company, *289 at the request of the petitioners, refunded to the petitioners $60,000 of the purchase price of the warehouse, and the petitioners, in turn, reimbursed one of their associates to the extent of one half of the refund. On February 28, 1957, Lawrence Warehouse Company, petitioner, and Union Ice & Storage Company entered into an agreement, which provided that the petitioner agreed to sell and transfer to Union Ice & Storage Company the Stockton Cold Storage Warehouse property for $200,000, $20,000 of which was to be deposited in an escrow to be opened with Security Title Insurance Company, Stockton, California, and the balance to be paid in annual installments of $20,000. This agreement also provided that it was subject to approval by the Public Utilities Commission of the State of California; and that in the event the Commission failed to approve the transaction on or before June 1, 1957, the agreement, at the option of Union Ice & Storage Company, should become void. On or about March 28, 1957, Lawrence Warehouse Company, petitioner, and Union Ice & Storage Company submitted an application to the Public Utilities Commission of the State of California for authorization for Lawrence *290 Warehouse Company to sell and transfer its cold storage and warehouse properties and business at Stockton, California, to petitioner, and for petitioner to sell and transfer said properties and business to Union Ice & Storage Company. The application stated that Lawrence Warehouse Company, the owner of the Stockton Cold Storage Warehouse property, entered into an agreement to sell the warehouse properties and business to petitioner on January 31, 1957, and that petitioner entered into an agreement to sell the warehouse properties to Union Ice & Storage Company on February 28, 1957. The Application further stated that Lawrence Warehouse Company, petitioner, and Union Ice & Storage Company requested the Public Utilities Commission of the State of California to authorize, pursuant to section 851 of the Public Utilities Code of California, the sale and transfer of the Stockton Cold Storage Warehouse properties from Lawrence Warehouse Company to petitioner in accordance with the terms and provisions of their agreement of January 31, 1957, and the sale and transfer of the warehouse properties and business from petitioner to Union Ice & Storage Company, in accordance with the terms and provisions *291 of their agreement of February 28, 1957. The Public Utilities Commission of the State of California, on April 22, 1957, approved the sale and transfer of the Stockton Cold Storage Warehouse properties from Lawrence Warehouse Company to petitioner, and from petitioner to Union Ice & Storage Company. Its opinion notes that the application shows "that Lawrence Warehouse Company desires to discontinue its operations * * * and that it has made arrangements to dispose of its real property and improvements to Fred Newburg," who would sell them to Union Ice & Storage Company. It ordered that "Lawrence Warehouse Company may sell and transfer the warehouse properties and business * * * to Fred Newburg," and that petitioner could sell them to Union Ice & Storage Company. On or about April 29, 1957, Lawrence Warehouse Company transferred its interest in the Stockton Cold Storage Warehouse property to the petitioner by a grant deed and a bill of sale. On or about May 9, 1957, the petitioner transferred his interest in the Stockton Cold Storage Warehouse property to Union Ice & Storage Company by a grant deed and a bill of sale. The petitioners' joint income tax return for 1957 in its schedule *292 of capital gains and losses reports the Stockton Cold Storage Warehouse transaction. It states that the property was acquired August 21, 1956 and sold August 21, 1957; and that the "Taxpayer has 1/4 interest" in the profit. No deductions were taken on the return for insurance, taxes paid or depreciation suffered with respect to the property. All of the agreements entered into for the sale of the Stockton Cold Storage Warehouse property between Lawrence Warehouse Company and petitioner, and between the petitioner and Union Ice & Storage Company were made subject to the prior approval or consent of the Public Utilities Commission of the State of California. Opinion The petitioner claims that he is entitled to long-term capital gains treatment of his sale of the Stockton Cold Storage Warehouse property. His position is that he acquired the Stockton Cold Storage Warehouse on August 20, 1956 and sold it on May 9, 1957, thus satisfying the more than six months holding period required by section 1231 of the 1954 Internal Revenue Code. The Commissioner's position is that the petitioner sold the property on May 9, 1957 but did not acquire the property at any *293 time prior to April 22, 1957 when the Public Utilities Commission of California approved the transfer. Amid the confusion of agreements between the petitioner and Lawrence Warehouse Company for the purchase of the property one of the few matters which seems clear to us is that the petitioner has not sustained its burden of proof that it acquired the Stockton Cold Storage Warehouse on August 20, 1956 and held it for the requisite six months period prior to its transfer to Union Ice & Storage Company on May 9, 1957 in order to entitle it to report its profit as a long-term capital gain. Indeed we are not convinced that the arrangements between the petitioner and Lawrence Warehouse Company intended that any real transfer of ownership to the petitioner would take place until the petitioner had a purchaser to acquire the property and there was an approval of the sale of the property by the California Public Utilities Commission. The purpose of the various agreements and the payments made earlier by the petitioner is not clear. Of the $100,000 paid by the petitioner to Lawrence Warehouse Company in 1956, $60,000 was refunded to the petitioner at his request in February 1957, at a period *294 just prior to the execution of the agreement to sell the property to Union Ice & Storage Company. The testimony suggesting that this payment was in lieu of rent for the premises is not convincing. No showing is made as to its reasonableness as rent and no mention was made of such rent in the agreements relating to the sale. Moreover, there are further indications that a transfer of ownership was intentionally delayed. The petitioner's income tax returns for 1956 and 1957 do not show that he paid the taxes and insurance on the property after the time when he claims that he acquired it; that rent was received or that depreciation on the property was deducted. See Ted F. Merrill, 40 T.C. 66, 74, affd. per curiam 336 F. 2d 771 (C.A. 9), where we said: we must take into consideration in determining a taxpayer's holding period for purposes of section 1231 not only the dates on which bare legal title to the property passed but also the dates on which the benefits and burdens or the incidents of ownership of the property were acquired and disposed of in a closed transaction. *295 It is recognized that property, in the legal sense, means not the thing itself, but the rights which inhere in it. * * * Ownership of property is not a single indivisible concept but a collection or bundle of rights with respect to the property. Normally, ownership of real estate would be considered transferred on the date of delivery of the deed. But where delivery of the deed is delayed to secure payment of the purchase price or for some other reason such as the escrow arrangement here involved, we believe the intent of the parties as to when the benefits and burdens of ownership of the property are to be transferred, as evidence by factors other than the passage of bare legal title, must control for purposes of this statute. Here we are at a loss to put substance or purpose into the earlier transactions, albeit payment was made by the petitioner, except that it was intended that the situation with regard to ownership remain fluid. Moreover, the approval of the transfer of the public warehousing permit by the California Public Utilities Commission was an expressed condition of the various *296 agreements between the petitioner and Lawrence Warehouse Company concerning the petitioner's purchase of the Stockton Cold Storage Warehouse property. In other words the parties to the transaction at all times intended that the transfer of the ownership and legal title to Stockton Cold Storage Warehouse was conditioned upon and would await the approval of the transfer by the California Public Utilities Commission. This did not happen until April 22, 1957. The property was deeded to the petitioner on April 29, 1957, who in turn transferred it to Union Ice & Storage Company by deed dated May 9, 1957. The petitioner did not hold the property in question for more than six months. See Ted F. Merrill, supra.
Decision will be entered for the respondent.